## In re Anonymous No. 7 D.B. 77

Disciplinary Board Docket no. 7 D.B. 77.

FOLEY, *Board Member*, December 8, 1977— Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF THE PROCEEDINGS

On February 22, 1977, office of disciplinary counsel filed a petition for discipline with respect to respondent. On May 2, 1977, disciplinary counsel and respondent, who represented himself throughout these proceedings, entered into a stipulation as to most of the facts, which was subsequently made a part of the record along with other exhibits. A hearing was held on May 5, 1977, before a hearing

committee [   ], consisting of [   ], Esq., chairman; [   ], Esq., and [   ], Esq. The hearing committee filed its report on June 14, 1977, unanimously recommending public censure for respondent. No objections to the findings and recommendations of the hearing committee were made and no exceptions were taken to its report.

## II. DISCUSSION

On July 16, 1972, [respondent] was retained to represent Mr. and Mrs. [A] for injuries that they and their minor son, [B], received as a result of a motor vehicle accident on March 18, 1972, in California. The [A's], who were residents of California, retained respondent because he was a long time friend of Mr. [A's] family. California has a one year statute of limitations for personal injuries. The [A's] informed respondent of the said fact. Subsequently, respondent, because of a secretarial error, missed the statute of limitations. He informed the [A's] in June of 1974, in response to an inquiry, that the suit had in fact been timely filed. The lawsuit was filed on August 8, 1973.

In August, 1975, respondent advised the [A's] that the highest settlement offer he could obtain from the insurance carrier was $34,000, when in fact neither an offer had been made nor had any negotiations even been conducted. This purported offer, less $8,500 attorney's fees, was, because of financial pressures, accepted by the [A's]. Respondent paid them $25,500 from funds which he borrowed. Subsequently, Mr. [A] requested a settlement sheet showing the amount attributed in the settlement towards their son, [B's], claim. When he

failed to obtain a reply, he called Stuyvesant Insurance Company to ascertain the division and learned the insurance company did not pay any money in settlement and that the California Superior Court had dismissed the claims of Mr. and Mrs. [A] because the statute of limitations had tolled them but not the claim of their child. Subsequently, Mr. [A] negotiated a settlement of $5,000 for his son with Stuyvesant Insurance Company.

Respondent testified on his own behalf at the hearing. He has been practicing law since 1957 without blemish and had been a close friend of Mr. [A's] family for approximately 40 years. He stated that it was because of this close relationship that he could not bring himself to tell the [A's] that he missed the one year statute of limitation and chose instead to borrow the $25,500 for the "settlement."

The findings of fact of the hearing committee, which evaluate and summarize the evidence, are adopted by the board as its own, as are its conclusions of law as to the sections of the Code of Professional Responsibility violated by respondent.

Respondent attempted to justify his actions by stating that it was in the best interest of his clients to settle for $34,000 without the necessity of having to file a suit against his malpractice carrier. We disagree and believe he acted solely in order to avoid personal and professional embarrassment. His deception, while acting in a fiduciary capacity, deprived his clients of having an opportunity to make an intelligent judgment of what course to follow in a case involving serious injuries.

In considering the type of discipline to be recommended, we have given consideration to respondent's prior good record and the fact that he has paid

out $25,500 of his own money. However, we cannot overlook respondent's violation of the Code of Professional Responsibility in our attempt to administer discipline uniformly. It is the opinion of the board that public censure is warranted.

### III. RECOMMENDATION

This board recommends to your honorable court that respondent be administered public censure by the Supreme Court.

Mr. Reath did not participate in the adjudication.

### ORDER

EAGEN, *C.J.*, And now, January 9, 1978, the report and recommendation of the Disciplinary Board of the Supreme Court dated December 8, 1977, is hereby accepted; and it is ordered that [respondent], be subjected to public censure by the Supreme Court, as provided in Rule 204(3) of the Rules of Disciplinary Enforcement, at the session of this court commencing April 10, 1978, at Philadelphia.